UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELAINE WANG, :
:
    Plaintiff, : Civil Action No. 1:21-cv-0026
:
v. :
:
: **COMPLAINT FOR VIOLATIONS OF**
COREPOINT LODGING INC., KEITH A. : **SECTIONS 14(a) AND 20(a) OF THE**
CLINE, MITESH B. SHAH, JAMES R. : **SECURITIES EXCHANGE ACT OF**
ABRAHAMSON, GLENN ALBA, JEAN M. : **1934**
BIRCH, ALAN J. BOWERS, GIOVANNI :
CUTAIA, ALICE E. GOULD, B. ANTHONY : **JURY TRIAL DEMANDED**
ISAAC, BRIAN KIM, and DAVID LOEB, :
:
    Defendants. :
---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against CorePoint Lodging Inc. ("CorePoint or the "Company") and the members CorePoint board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of CorePoint by affiliates of Highgate Holdings and Cerberus Capital Management, L.P. ("the Buyout Group").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on December 17, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Cavalier MergerSub LP ("Merger Sub"), a wholly owned subsidiary of Cavalier Acquisition Owner LP ("Parent"), will merge with and into CorePoint with Merger Sub surviving the merger as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each CorePoint common share issued and outstanding will be converted into the right to receive $15.65 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked CorePoint stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CorePoint stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Parent is headquartered in this District, and the closing of the Transaction will occur in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of CorePoint common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Keith A. Cline has served as a member of the Board since 2018 and is the President and Chief Executive Officer of the Company.

11. Individual Defendant Mitesh B. Shah has served as a member of the Board since 2018.

12. Individual Defendant James R. Abrahamson has served as a member of the Board since 2018.

13. Individual Defendant Glenn Alba has served as a member of the Board since 2018.

3

14. Individual Defendant Jean M. Birch has served as a member of the Board since 2018.

15. Individual Defendant Alan J. Bowers has served as a member of the Board since 2018.

16. Individual Defendant Giovanni Cutaia has served as a member of the Board since 2018.

17. Individual Defendant Alice E. Gould has served as a member of the Board since 2018.

18. Individual Defendant B. Anthony Isaac has served as a member of the Board since 2018.

19. Individual Defendant Brian Kim has served as a member of the Board since 2018.

20. Individual Defendant David Loeb has served as a member of the Board since 2018.

21. Defendant CorePoint is incorporated in Maryland and maintains its principal offices at 125 E. John Carpenter Freeway, Suite 1650, Irving, Texas 75062. The Company's common stock trades on the New York Stock Exchange under the symbol "CPLG."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

24. CorePoint, a real estate investment trust company, owns select-service hotels primarily under the La Quinta brand in the United States. As of December 31, 2020, it had a portfolio of 209 select-service hotels and approximately 27,800 rooms across 35 states in the

United States. The Company has elected to be taxed as a real estate investment trust. As a result, it would not be subject to corporate income tax on that portion of its net income that is distributed to shareholders. CorePoint was incorporated in 2017 and is headquartered in Irving, Texas.

25. On November 8, 2021, CorePoint announced that it had entered into the Proposed Transaction:

> IRVING, Texas, Nov. 08, 2021 (GLOBE NEWSWIRE) -- CorePoint Lodging Inc. (NYSE: CPLG) ("CorePoint" or the "Company"), a pure play select-service hotel owner strategically focused on the midscale and upper-midscale segments, today announced that it has entered into a definitive agreement to be acquired through a joint venture between affiliates of Highgate and Cerberus Capital Management, L.P. ("Cerberus").
>
> Under the terms of the merger agreement, Highgate and Cerberus will acquire all outstanding shares of CorePoint common stock in an all-cash transaction valued at approximately $1.5 billion based on the $15.65 per share consideration, which reflects the assumption of current net debt and a $160 million buyer liability reserve for the Internal Revenue Service ("IRS") matter detailed below. This price represents a premium of approximately 42% to CorePoint's closing share price on July 13, 2021, the last trading day prior to the Company's public announcement of its strategic alternatives process.
>
> In addition to the $15.65 per share payable in cash at closing, CorePoint stockholders may receive incremental cash consideration per share pending timely resolution of the previously disclosed tax proceedings with the IRS related to an ongoing audit of CorePoint entities, which began prior to the Company's 2018 spin-off from La Quinta Holdings, Inc. The amount of any potential additional cash consideration payable to CorePoint stockholders will be calculated based on the amount, if any, by which the settlement amount is less than a buyer liability reserve of $160 million agreed to by the parties. The Company received a settlement offer from the IRS with respect to the IRS matter on November 5, 2021, and expects to accept that offer and enter into an agreement with the IRS this week. The settlement offer provides for total payments by the Company of approximately $89.6 million plus statutory interest through the date of payment. Pursuant to this settlement offer, the Company estimates the total payment amount pursuant to the settlement will be approximately $155 million. As such, the Company currently

expects that the amount of any such additional consideration will likely be approximately $0.10 per share. There can be no assurances that any additional consideration will be received by the Company's stockholders.

Keith Cline, President and Chief Executive Officer of CorePoint, said, "Over the past few years, CorePoint has been executing on a disciplined asset disposition strategy that has transformed the Company's portfolio and created substantial value. This transaction continues our strategy of maximizing value and represents a compelling opportunity to deliver immediate and certain cash value to our stockholders. Our portfolio has accomplished a great deal over the past several years, and I would like to thank the entire team at CorePoint along with Wyndham, especially their operations field leaders, general managers and hotel staff, for the dedication, hard work and commitment to CorePoint."

Mitesh Shah, CorePoint's Chairman of the Board, added, "The CorePoint Board, in consultation with our independent financial and legal advisors, conducted a comprehensive review of strategic alternatives and unanimously determined that this transaction maximizes value for our stockholders. The resilience and achievements of CorePoint's entire team have unlocked substantial value through a deliberate, non-core disposition strategy, and today's all-cash sale represents a successful culmination of these efforts."

"Highgate has tremendous respect for CorePoint and its highly experienced team, having observed the Company strengthen, refine and cultivate a leading portfolio of select service hotels," said Mahmood Khimji, Co-Chairman of Highgate. "We are thrilled to partner with our friends at Cerberus on another exciting transaction, through which Highgate will continue to enhance its capabilities in the select service space. We look forward to collaborating with the many associates and stakeholders involved towards a successful closing, and to working closely with the Wyndham Hotels team as we embark on the next chapter for this portfolio."

Tom Wagner, Head of North American Real Estate at Cerberus, commented: "Since separating from La Quinta Holdings, Inc. in 2018, the CorePoint management team has done an excellent job running the business, navigating the unprecedented COVID-19 pandemic, and strategically repositioning its portfolio. Alongside Highgate, we are excited for the opportunity to build on these positive strides and establish the Company's next chapter of growth as a private company."

**Timing and Approvals**

The transaction is expected to close in the first quarter of 2022, subject to the approval of CorePoint's stockholders and the satisfaction of other customary closing conditions. There is no financing condition to the transaction.

In connection with the transaction, affiliates of Blackstone Inc. which own approximately 30% of CorePoint's total shares outstanding, have entered into a voting agreement under which they have agreed to vote all of their shares in favor of the transaction.

Upon successful completion of the transaction, CorePoint's common stock will no longer be listed on the New York Stock Exchange, and the Company will be privately owned.

**Third Quarter 2021 Earnings**

In light of the pending transaction with Highgate and Cerberus, CorePoint will not hold an earnings conference call for the third quarter of 2021. The Company separately released its financial results for the third quarter this morning.

**Advisors**

J.P. Morgan Securities LLC is serving as lead financial advisor to CorePoint, Hodges Ward Elliott, LLC as co-advisor, and Simpson Thacher & Bartlett LLP as legal counsel to CorePoint.

Deutsche Bank Securities Inc. is serving as financial advisor to Highgate and Cerberus. Additionally, Deutsche Bank and Bank of Montreal provided a debt financing commitment to Highgate and Cerberus on this transaction. Latham & Watkins LLP and Kirkland & Ellis LLP acted as legal counsel to Highgate and Cerberus.

* * *

26.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that CorePoint's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

27.    On December 17, 2021, CorePoint filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28.    The Proxy Statement fails to provide material information concerning financial projections by CorePoint management and relied upon by J.P. Morgan in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and J.P. Morgan with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that CorePoint management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Hotel Adjusted EBITDAre, Adjusted EBITDAre, and Unlevered Free Cash Flows, but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning the Financial Advisors' Financial Analysis*

33. With respect to J.P. Morgan's *Public Trading Multiples* analysis for CorePoint, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by J.P. Morgan in the analysis.

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the line items used to calculate the unlevered free cash flows of the Company; (ii) the terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetual growth rates ranging from 2.0% to 3.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.50% to 10.50%; (iv) the weighted cost of capital of CorePoint.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by J.P. Morgan and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of CorePoint within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of CorePoint, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of CorePoint, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CorePoint, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 3, 2022                                          **MELWANI & CHAN LLP**

                                                                                     By:  /s *Gloria Kui Melwani*

                                                    _____
                                                    Gloria Kui Melwani (GM5661)
                                                    1180 Avenue of Americas, 8th Fl.
                                                    New York, NY 10036
                                                    Telephone: (212) 382-4620
                                                    Email: gloria@melwanichan.com

                                                    *Attorneys for Plaintiff*